## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| JERRY JOHNNY THOMPSON, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | **7 : 12-CV-99 (HL)** |
| LT. LARRY BYRD, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| ——————————————— | : | |

## RECOMMENDATION

Plaintiff, who is proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 on August 8, 2012.   (Doc. 1).   Presently pending in this action is Defendants' Motion for Summary Judgment.   (Doc. 46).

### Background

Plaintiff alleges that Defendants, employees at Colquitt County Jail ("CCJ"), deliberately housed Plaintiff with inmates who may have wanted to harm him.   (Doc. 1).   The Complaint also states that Defendants Daniels, Thompson, and Long, all jailers at CCJ, made comments to inmates intending to provoke the inmates into attacking Plaintiff.   (Docs. 1, 6).   Further, Plaintiff alleges that he was denied due process by Defendant Byrd, the chief jailer at CCJ, and Defendant Long when he was placed in administrative segregation without a disciplinary hearing on two occasions.   Plaintiff also maintains that Defendant Byrd retaliated against Plaintiff for filing grievances and lawsuits in violation of Plaintiff's First Amendment rights, and that Defendants Byrd and Cox, the jail supervisor at CCJ, violated Plaintiff's rights by denying his grievances.

Defendants filed their Motion for Summary Judgment on June 14, 2013. (Doc. 46).   On June 17, 2013, the Court notified Plaintiff of the filing of Defendants' Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order.   (Doc. 52).   Plaintiff filed his Response to Defendants' Motion for Summary Judgment on July 18, 2013.   (Docs. 57-59).

### Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).   All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party.   *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).   The movant "always bears the initial responsibility of informing the district court of the basis for its

motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.   "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it".   Fed R. Civ. P. 56(e)(3).

## Discussion

In asserting that they are entitled to summary judgment, Defendants have submitted the affidavit and supplemental affidavit of Defendant Hope Davis, the Grievance Coordinator at CCJ, court documents, portions of CCJ records, and Plaintiff's deposition.   (Docs. 49, 51, 53, 54, 62).

Plaintiff has submitted his Response, which includes affidavits from Plaintiff, and inmates William Tucker, Shane Strien, and Craig Lee Adams, statements from inmates Michael McMurphy and Shannon Bright, and portions of CCJ records.   (Doc. 58-59).   The record also contains Plaintiff's sworn deposition testimony, submitted by Defendants, with certain sections specifically pointed to and identified by Defendants in support of their summary judgment motion. (Doc. 51, Plaintiff's Depo.).   Rule 56 clearly allows for the Court's consideration of the entire record when ruling on a motion for summary judgment.   "The court need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3).

The Eleventh Circuit has also recognized that courts must consider the record as a whole in ruling on motions for summary judgment.   *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) ("[w]here the record taken as a whole could not lead a rational trier of fact to

3

find for the non-moving party, there is no genuine issue for trial") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) ("[i]n opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole").   The Court is mindful, as well, of Plaintiff's *pro se* prisoner status, which the Eleventh Circuit has noted entitles the Plaintiff's pleadings and briefs to a more liberal construction.   *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).   Thus, Plaintiff's sworn deposition testimony is properly considered herein as part of the record as a whole and in deciding Defendants' Motion for Summary Judgment.

A. *First Amendment*

Plaintiff alleges that Defendant Byrd placed a Mexican inmate and Inmate Cedric Gilbert in Plaintiff's dayroom out of retaliation for Plaintiff filing grievances and lawsuits.   (Doc. 1). Retaliation occurs when a prison official disciplines a prisoner for filing complaints, grievances, or lawsuits, or otherwise exercising his First Amendment right.   *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).   "For a prisoner to state a First Amendment retaliation claim under § 1983, the prisoner must establish: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on the speech." *Thomas v. Lawrence*, 421 Fed. Appx. 926, 918 (11th Cir. 2011) (citing *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008)).

To prevail, the plaintiff must show that "the discipline he received would likely deter a prisoner of ordinary firmness from complaining about the conditions of his confinement."

*Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).   "The second element of the cause of action thus requires an objective standard and a factual inquiry."   *Thomas*, 421 Fed. Appx. at 918.   The third element of the cause action (the causal connection inquiry) "asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of some of the conditions of his confinement."   *Smith*, 532 F.3d at 1278.

The evidence shows that it was Plaintiff's understanding that he "was not to be housed with any Mexicans."   (Doc. 51, Plaintiff's Depo., p. 89, ll. 7-10).   On June 1, 2011, a Mexican National was transferred into Plaintiff's pod.   (*Id.* at p. 91, ll. 1-4).   Plaintiff never spoke to the individual, and was never assaulted or physically harmed by the individual who was transferred to his pod.   (*Id.* at p. 91, ll. 8-12).   Cedric Gilbert, an inmate whom Plaintiff considers violent, was moved into Plaintiff's dayroom on August 2, 2012.   (*Id.* at p. 112, ll. 7-16).   There is no evidence that Inmate Gilbert physically harmed Plaintiff.   Additionally, Plaintiff continued to file grievances and requests with Defendant Byrd after the alleged retaliatory actions.   (Doc. 49-9).

There is no evidence that these two inmates were moved into Plaintiff's dayroom in an effort to discipline Plaintiff for exercising his First Amendment rights.   *See Moss v. Gradia*, 2010 WL 337603, *6 (N.D. Fla., Jan. 21, 2010) ("Plaintiff must produce 'affirmative evidence' of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive.").   Additionally, Plaintiff continued to engage in the protected speech (filing grievances), and thus the evidence shows that Plaintiff was not adversely affected by the alleged retaliatory actions.   *See id.* (finding the facts did not support a finding of "adverse affect" when the plaintiff had filed 6 grievances after the alleged retaliation).   The evidence also fails to show

that "a prisoner of ordinary firmness" would be deterred from complaining about the conditions of his confinement as a result of the alleged discipline Plaintiff received.   *See Smith*, 532 F.3d at 1276.

As the record fails to show *any* evidence that the alleged retaliatory actions were related to Plaintiff's protected speech and as Plaintiff was not deterred from engaging in the protected activity, there is no genuine issue of material fact remaining as to his claims of retaliation alleged against Defendant Byrd.   *See Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (affirming summary judgment where the plaintiff produced only his conclusory allegations that the defendant's actions were motivated by retaliation); *Simmons v. Foster*, 2009 WL 3418164, *2 (M.D. Ga., Oct. 15, 2009) (granting summary judgment where the plaintiff failed to connect his protected activity with the disciplinary action that took place).

B. *Eighth Amendment*

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."   *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).   "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[ ] reasonably to the risk.'" *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (quoting *Farmer*, 511 U.S. at 843).   A "[p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."   *Purcell ex. rel. Estate of Morgan v. Toombs County, Ga*, 400 F.3d 1313, 1319 (11th Cir. 2005) (internal quotations omitted).

"[A] prison official cannot be found liable under the Eighth Amendment . . . unless the

official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832.   "The known risk

of injury must be 'a strong likelihood, rather than a mere possibility' before a guard's failure to

act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.

1990) (quoting *Edwards v. Gilbert*, 867 F.3d 1271, 1276 (11th Cir. 1989)).

"Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating

or rape of one prisoner by another serves no legitimate penological objective." *Farmer*, 511

U.S. at 833 (internal punctuation omitted).

> A prison official who endangers the life or safety of a prisoner by
> prompting other inmates to injure him necessarily violates the
> Eighth Amendment, for suffering physical assaults while in prison
> is not part of the penalty that criminal offenders pay for their
> offenses against society.   When a prison guard incites other
> prisoners to beat a fellow inmate, it is as if the guard himself
> inflicted the beating as punishment.

*Jones v. Lawrence*, 2008 WL 5142396, *5 (S.D. Ga., Dec. 5, 2008) (internal citations omitted).

*(1) Inmate Attacks on Plaintiff*

Plaintiff alleges that Defendant Mathis, a jailer at CCJ, was deliberately indifferent to a

serious risk of harm to Plaintiff, because Defendant Mathis did not assist Plaintiff after he told

her that he had been assaulted by Inmates Breland and Aikens.   (Doc. 1).   Defendants contend

that this claim is barred by the statute of limitations. (Doc. 47).

Plaintiff testified that he was attacked by Inmates Breland and Aikens when they were

housed in Pod 1, Dayroom 6.   (Doc. 51, Plaintiff's Depo., p. 45, ll. 8-24).   Following the attack,

Plaintiff told Defendant Mathis that he had been assaulted.   (*Id.* at p. 51, ll. 3-8).   Defendant

Mathis told Plaintiff that she did not have time to deal with the problem, and that Plaintiff needed to learn how to protect himself.   (*Id.* at p. 51, ll. 13-15).   Defendants' evidence shows that the only time Plaintiff was housed with both Inmates Breland and Aikens in Pod 1, Dayroom 6 was from January 16, 2008 until March 4, 2008.   (Doc. 49, Davis Aff., ¶ 12).

Since 42 U.S.C. § 1983 does not contain a specific statute of limitations, claims are governed by the state personal injury statute of limitations.   *Acoff v. Abston*, 762 F.2d 1543, 1546 (1985); *Wilson v. Garcia*, 471 U.S. 261 (1985).   In Georgia, the statute of limitations for personal injury actions is two years.   Ga. Code. Ann. § 9-3-33.   The "statute of limitations begins to run from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Brown v. Georgia Bd. of Pardons and Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996)).

Plaintiff testified that the attack occurred when Breland and Aikens were housed in Pod 1, Dayroom 6.   The evidence shows that the only time these two inmates were housed with Plaintiff in Pod 1, Dayroom 6 was from January 16, 2008 until March 4, 2008.   The facts that would support Plaintiff's cause of action against Defendant Mathis for her alleged deliberate indifference to Plaintiff after he was attacked by Inmates Breland and Aikens should have been apparent to Plaintiff by no later than March 4, 2008.   Plaintiff, however, did not file the instant action until August of 2012, which was well after the two year statute of limitations period ran. Accordingly, Plaintiff's claim against Defendant Mathis for her alleged deliberate indifference after Plaintiff was attacked by Inmates Breland and Aikens is barred by the statute of limitations.

Plaintiff also alleges that Defendants Byrd, Daniels, Mathis, Davis, Long, and Hicks,

8

another jailer at CCJ, failed to protect Plaintiff from an attack by Inmate Tobias Thomas. (Doc. 1).   Plaintiff was assaulted by Inmate Thomas in May of 2011.   (Doc. 51, Plaintiff's Depo., p. 53, ll. 8-13).   Prior to the assault, both Plaintiff and Inmate Thomas attempted to get Inmate Thomas moved from Plaintiff's dayroom.   (*Id.* at p. 87, l. 11).   Defendant Mathis did nothing. (*Id.* at p. 87, ll. 12-13).   Defendant Davis apparently told officers that Plaintiff and Inmate Thomas needed to learn to live together.   (*Id.* at p. 87, ll. 13-19; Doc. 58-1, Plaintiff's First Aff., ¶ 8).   After Plaintiff was assaulted, he told a non-party nurse about the incident.   (*Id.* at p. 56, ll. 1-7). "[T]he file maintained at [CCJ] with respect to Thomas does not indicate that Thomas was involved in any [physical] altercation prior to May 11, 2011."   (Doc. 49, Davis Aff., ¶ 14).

There is no evidence showing that Defendants Byrd, Daniels, Mathis, Davis, Hicks, or Long had subjective knowledge that Inmate Thomas posed a substantial risk of serious harm to Plaintiff.   While both Plaintiff and Inmate Thomas asked to be moved prior to the assault, there is no evidence to show that they communicated specific facts showing that Plaintiff faced a substantial risk of serious harm.   *See Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (determining that plaintiff's statements to the defendants that his cellmate was acting crazy was not enough to show that the defendants had subjective knowledge of a serious risk of harm to the plaintiff; the defendants must be aware of a "particularized threat or fear felt by [the p]laintiff"); *Sanford v. Toby*, 2013 WL 4787143, *6 (S.D. Ga., Sept. 6, 2013) (finding the defendants did not have subjective knowledge of a substantial risk of serious harm when the plaintiff made statements to the defendants about his cellmates, but the statements did not show any *particularized* threat or fear); *Metheny v. Smith*, 2006 WL 566111 (S.D. Ga., March 6, 2006) (granting motion to dismiss for failure to state a claim because plaintiff's allegations that he told

9

defendants that a specific inmate was a threat to plaintiff did not show that the defendants had subjective knowledge of a risk of harm).

Furthermore, there is no evidence to show that these Defendants should have been concerned about the likelihood of an assault, such as previous altercations between Plaintiff and Inmate Thomas, or any history of Inmate Thomas assaulting other inmates.   *See Lockett v. Lawrence*, 2010 WL 2367517, *2 (S.D. Ga. March 18, 2010).   There were no prior reports of physical altercations involving Inmate Thomas that would have given Defendants Byrd, Daniels, Mathis, Davis, Hicks, or Long subjective knowledge that Inmate Thomas posed a serious risk of harm to Plaintiff.

Based on the evidence before the Court, these Defendants lacked the subjective knowledge necessary to be liable under § 1983 for failing to protect Plaintiff from the attack by Inmate Thomas.   Considering the evidence in the light most favorable to Plaintiff, a jury could not reasonably conclude that Defendants Byrd, Daniels, Mathis, Davis, Hicks, or Long acted with deliberate indifference by failing to protect Plaintiff from Inmate Thomas.

*(2) Inciting Other Inmates*

Plaintiff maintains that Defendants Thompson and Daniels tried to provoke inmates into attacking Plaintiff in violation of Plaintiff's Eighth Amendment rights.   (Doc. 1).   Plaintiff also alleges that Defendant Long put Plaintiff's life in danger by talking about Plaintiff's criminal case in front of other inmates.   (Doc. 6).

The evidence shows that Defendant Thompson told two dayrooms that Plaintiff killed a child, and that she would turn a blind eye if the inmates did anything to Plaintiff.   (Doc. 51, Plaintiff's Depo., p. 101, l. 21 – p. 102, l. 13, p. 117, l. 21 – p. 118, l. 1; *see also* Doc. 58-1,

Strien Aff., ¶ 5).   Defendant Daniels told inmates that Plaintiff was a racist, and talked about Plaintiff's case. (Docs. 51, Plaintiff's Depo, p. 109, ll. 5-13; 58-1, Adams Aff., ¶ 4).   The evidence also shows that Inmate Strien heard Defendant Daniels offer inmates her paycheck if they beat up Plaintiff.   (Doc. 58-1, Strien Aff., ¶ 4).   Plaintiff was verbally threatened by inmates.   (Doc. 51, Plaintiff's Depo., p. 109, ll. 21-22).   However, Plaintiff testified that he had not been assaulted since Defendants Thompson and Daniels made comments about Plaintiff, and Plaintiff testified that, at the time of his deposition, everything was calm.   (*Id.* at p. 103, ll. 5-9, p. 108, ll. 21-24, p. 109, ll. 18-21).   The evidence also shows that Defendant Long told an inmate that Plaintiff was a baby killer.   (*Id.* at p. 122, ll. 19 – 22).

There is no evidence showing that Plaintiff faced a strong likelihood of being attacked after Defendants Thompson, Daniels, and Long made statements about Plaintiff and/or about Plaintiff's case.   Plaintiff was never physically assaulted as a result of the statements made by these three Defendants, and Plaintiff testified that things were calm.   While Plaintiff testified that he was verbally threatened, "[a]bsent special circumstances, general hostilities exhibited by prisoners do not alone amount to a substantial risk of serious harm."   *Smothers v. Brown*, 2013 WL 6243402, *3 (N.D. Fla., Dec. 3, 2013) (citing *Carter*, 352 F.3d at 1349).

Plaintiff did not suffer physical injury as a result of the comments made by these three Defendants.   Further, the evidence shows that Plaintiff was, at most, exposed only to general hostilities after the comments were made.   The evidence does not show that Plaintiff was exposed to a "reasonably preventable assault" as a result of the statements made by these Defendants.   *See Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996).   As the evidence fails to show that these Defendants created a substantial risk of serious harm to Plaintiff, a reasonable

11

jury could not conclude that Defendants Thompson, Daniels, or Long violated Plaintiff's Eighth Amendment rights when they made statements about Plaintiff to other inmates. *See Brown v. Ellis*, 175 F.3d 1019, *2 (7th Cir. 1999) (finding that allegations that a prison guard informed other inmates that the plaintiff was a snitch should have been dismissed when the plaintiff was never assaulted as a result of the prison guard's actions); *Shabazz v. Barrow*, 2006 WL 826712, *3 (M.D. Ga., March 29, 2006) (finding the plaintiff had failed to state a claim when he alleged that he was in fear of inmates attacking him after a well-liked prison guard issued a disciplinary report against the plaintiff, because it is the reasonably preventable assault itself, not the fear of assault, that gives rise to an Eighth Amendment violation).

To the extent that Plaintiff requests injunctive relief to stop any future harm, this claim must also fail. "An inmate may be granted injunctive relief or declaratory relief even in the absence of proof that he actually has been injured by the dangerous condition." *Nichols v. Riley*, 141 Fed. Appx. 868, 869 (11th Cir. 2005). However, under established law in this circuit, a prisoner's claim for injunctive relief is mooted by his transfer to a different prison facility. *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). On September 10, 2013, Plaintiff notified the Court he had been transferred from CCJ to Edgefield Federal Correctional Facility. (Doc. 63). As Plaintiff has been transferred to a different prison, any claim for injunctive relief in this action fails.

C. *Fourteenth Amendment*

Plaintiff maintains that his due process rights were violated when Defendants Byrd and Long placed Plaintiff in lockdown without providing him with a disciplinary hearing. (Doc. 1). To state a cognizable claim for the deprivation of a due process right under the Fourteenth

12

Amendment, a prisoner must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Shaarbay v. Palm Beach County Jail*, 350 Fed. Appx. 359, 361 (11th Cir. 2009) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[I]n the prison context, state action will not violate due process unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' and 'discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.'" *Id.* (quoting *Sandin v. R.D. Conner*, 515 U.S. 472, 484, 485 (1995)); *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991).

Plaintiff testified that, in October of 2010, he was placed on lockdown for ten days after receiving a write-up for being in a different dayroom than he was assigned.  (Doc. 51, Plaintiff's Depo., p. 64).   Plaintiff provided Defendant Byrd with a written request for a hearing regarding the disciplinary action.  (*Id.* at p. 65, ll. 15-20).   Plaintiff did not receive a hearing.  (*Id.* at p. 67, ll. 17-18, 21-23).   While Plaintiff was on lockdown, he was allowed out of his cell for one (1) hour per day to shower and walk around; he was allowed to read books, write letters, and receive mail; and Plaintiff received three meals per day.  (*Id.* at p. 62, l. 12 – p. 63, l. 1, p. 63, ll. 7-9).   On June 2, 2011, Plaintiff was placed in isolation for approximately 15 days after kissing a female inmate.  (*Id.* at p. 96, ll. 14-25, p. 97, ll.7-9).   Plaintiff was again denied a disciplinary hearing.  (*Id.* at p. 97, ll. 18-25).

There is no evidence to show that Plaintiff suffered a change to his conditions of confinement that violated the Constitution.   Further, there is no evidence showing that Plaintiff's conditions of confinement fell outside the sentence imposed on him.   Plaintiff was

able to shower and walk around daily; he was allowed to read, write letters, and receive mail; and Plaintiff received three meals per day.   The evidence fails to show that Plaintiff's confinement in isolation and on lockdown was either "atypical" or imposed a "significant hardship" on Plaintiff; thus, there is no evidence showing Plaintiff's due process rights were violated.   *See Shaarbay*, 350 Fed. Appx. at 362 (finding 30 days in disciplinary confinement did not violate the prisoner's due process rights); *Nelson v. Green*, 2005 WL 3116747 (11th Cir. Nov. 23, 2005) (finding allegations of 7 days of disciplinary confinement did not state a deprivation of a protected liberty interest).   Plaintiff has failed to show that a genuine issue of material fact remains as to his due process claim.

### Conclusion

Plaintiff has failed to sufficiently rebut Defendants' summary judgment showing, and thus it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **GRANTED**.   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

### *Dismissal of Remaining Claims*

Two claims remain if Defendants' Motion for Summary Judgment is granted: (1) Defendant Byrd destroyed grievances and failed to respond to grievances, and (2) Defendant Cox failed to respond to Plaintiff's letters.   (Docs. 1, 6).

"[A] prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."   *Dunn v. Martin*, 178 Fed. Appx. 876, 878 (11th Cir. 2006).   "[A]lleged

14

misdeeds regarding grievance procedures do not give rise to stand-alone claims under §1983."

*Blackerby v. McNeal*, 2008 WL 2047814, * 2 (S.D. Ga., May 13, 2008).   Furthermore, there is

no § 1983 liability simply because a jail official did not act based on the content of a grievance.

*See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004) ("Section 1983

liability may not be imposed simply because a defendant denied an administrative grievance or

failed to act based upon information contained in a grievance.").   Additionally, "[a]s a general

rule, a [prison official] may not be held liable under § 1983 for failure to respond to grievances

and letters."   *Thomas v. Humphrey*, 2013 WL 3282892, *5 (M.D. Ga., June 27, 2013); *Dunn v.

Martin*, 178 Fed. Appx. 876, 878 (11th Cir. 2006) (finding the plaintiff did not have a

constitutionally protected interest in receiving responses to his letters and grievance); *Huey v.

Danforth*, 2012 WL 5354563, *3 (M.D. Ga., Oct. 29, 2012) ("a prison warden may not be held

liable for damages based merely on his failure to respond to an inmate's letter of complaint").

Plaintiff does not have a right to engage in the prison grievance process, and cannot hold

Defendants Byrd and Cox liable for their failure to respond to Plaintiff's letters and grievances.

Plaintiff's claim against Defendant Byrd for destroying Plaintiff's grievances and failing to

respond to Plaintiff's grievances, and Plaintiff's claim against Defendant Cox for failing to

respond to Plaintiff's letters are not actionable under § 1983.   Accordingly, the undersigned

recommends that these two remaining claims be **DISMISSED** due to Plaintiff's failure to state a

claim.   *See* 28 U.S.C. § 1915(e)(2)(B); *Smith v. Regional Director of Florida Department of

Corrections*, 368 Fed. Appx. 9, 11 (11th Cir. 2010) ("Federal law clearly provides that a district

court may dismiss an IFP action at any time for frivolity or failure to state a claim.").

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the

recommendations contained herein with the Honorable Hugh Lawson, United States District

Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this

Recommendation.

      If this Recommendation is adopted in its entirety by the district judge assigned to this case,

no claims or Defendants will remain in this case.

      **SO RECOMMENDED**, this 17th day of January, 2014.

               s/ ***THOMAS Q. LANGSTAFF***
               **UNITED STATES MAGISTRATE JUDGE**

llf